TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00253-CV







Owens-Corning Fiberglas Corporation, Appellant



v.



Mavis Hurley, Individually and as Personal Representative of the Estate of


Ivan Hurley, Brenda Hudson and Morris Dunn Hudson; David Ambrose Fluker


and Linda Fluker; James Melvin Dixon and Caron Dixon, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 92-09252A, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 Appellant Owens-Corning Fiberglas Corporation ("Owens-Corning") appeals from
a judgment awarding appellees compensatory and punitive damages following a jury trial. We
will affirm the trial-court judgment.



THE CONTROVERSY


 The appeal involves four consolidated actions for wrongful death, personal injury,
and loss of consortium resulting from unrelated incidents of exposure to "Kaylo," an asbestos-containing insulation product manufactured by Owens-Corning. The case was tried under the
substantive law of Alabama, the state in which the asbestos exposure occurred. See Tex. Civ.
Prac. & Rem. Code Ann. § 71.031 (West 1986). 

 Mavis Hurley, as representative of her deceased husband's heirs and estate, brought
the only wrongful-death claim. Ivan Hurley died as a result of asbestos-related mesothelioma. 
The jury awarded Mrs. Hurley approximately $775,000 in punitive damages for her husband's
wrongful death and $580,000 in compensatory damages. (1) The remaining plaintiffs' claims were
based on injuries and loss of consortium resulting from exposure to asbestos. The jury awarded
the Fluker and Hudson plaintiffs a total of $45,000 in compensatory damages, rejected their
claims for punitive damages, and found in favor of Owens-Corning on the Dixon plaintiffs'
actions. The trial court rendered judgment on the verdict, and Owens-Corning's motion for new
trial was overruled by operation of law. 

 In four points of error Owens-Corning challenges the consolidation of the actions,
the exclusion of certain evidence, and the punitive-damage award. 



CONSOLIDATION


 In point of error two, Owens-Corning contends the trial court abused its discretion
in consolidating the actions, specifically claiming prejudice from the consolidation of the
wrongful-death claim with the three personal injury claims. See Hamilton v. Hamilton, 280
S.W.2d 588, 591 (Tex. 1955); Parker v. Potts, 342 S.W.2d 634, 636 (Tex. Civ. App.--Fort Worth
1961, writ ref'd n.r.e.).


 Actions involving common questions of law or fact may be consolidated for trial
for the purposes of judicial economy and convenience. Tex. R. Civ. P. 174(a). Owens-Corning
argues "there was no common question of law or fact" because the cases of asbestos exposure
stem from different factual contexts, resulted in different illnesses, and required different
defenses. We disagree. In all four cases, the exposure to asbestos occurred in industrial settings. 
The actions presented common questions regarding causation and Owens-Corning's liability. 
Although the defenses may have varied somewhat, they were not unique in each case. The same
medical experts testified in all four cases, and the testimony and documentary evidence regarding
Owens-Corning's knowledge of the danger of Kaylo was relevant in all four actions. We find no
error by the trial judge in consolidating the actions. See Potts, 342 S.W.2d at 636; Lone Star
Ford, Inc. v. McCormick, 838 S.W.2d 734, 738 (Tex. App.--Houston [1st Dist.] 1992, writ
denied); Air Prod. & Chem. v. Sanderson, 789 S.W.2d 651, 653-654 (Tex. App.--Beaumont 1990,
orig. proceeding); cf. Dal-Briar Corp. v. Baskette, 833 S.W.2d 612, 616 (Tex. App.--El Paso
1992, orig. proceeding). Even if the consolidation was legally erroneous, however, the record
shows no resulting prejudice. 

 The only prejudice Owens-Corning claims is based on an alleged difference under
Alabama law regarding what a jury may consider when assessing punitive damages in actions for
wrongful death compared to actions for personal injury. As a general rule, a statute governing
punitive damages precludes a jury from considering evidence of a defendant's financial condition
but allows the judge to consider such evidence during a post-verdict review of any punitive
damages found by the jury. Ala. Code § 6-11-23 (1979). By its terms, however, this statute does
not apply to wrongful-death actions in which the only authorized damages are punitive. Ala. Code
§ 6-11-29 (1979); Ala. Code § 6-5-410 (1975). Owens-Corning therefore contends that under
Alabama law a jury in a wrongful-death action can and must consider evidence of a defendant's
financial condition in order to assess punitive damages. We disagree.

 The justification for the Alabama statute lies in the risk that evidence of financial
condition would corrupt the fact-finding process. Industrial Chem. v. Chandler, 547 So. 2d 812,
836 (Ala. 1988) (citing Southern Life & Health Ins. Co. v. Whitman, 358 So. 2d 1025, 1026-27
(Ala. 1978)); Green Oil v. Hornsby, 539 So. 2d 218, 222 (Ala. 1989). From an evaluation of
Alabama's case law, we conclude this justification applies with equal force to actions for wrongful
death, although such actions are specifically excluded from the general punitive-damages statute. (2) 
Chandler, 547 So. 2d at 836; see also Campbell v. Williams, 638 So. 2d 804, 818 (Ala. 1994).

 To ensure that the jury's discretion in finding punitive damages is not unbridled,
Alabama requires, in addition to de novo review of the punitive-damage award on appeal, a post-verdict review of the award during which the financial position of the defendant is an essential
factor for consideration by the trial judge. Green Oil, 539 So. 2d at 222. Alabama courts have
consistently applied this post-verdict safeguard to punitive damages awarded in wrongful-death
cases. General Motors Corp. v. Johnston, 592 So. 2d 1054, 1063 (Ala. 1992); Central Alabama
Elec. Co. v. Tapley, 546 So. 2d 371, 377-78 (Ala. 1989). 

 That wrongful-death actions are specifically excluded from Alabama's general
punitive-damage statute does not diminish the force with which the rule prohibiting jury
consideration of the defendant's financial position applies to all actions in which punitive damages
are sought, including wrongful-death actions. Owens-Corning has failed to demonstrate how it
was prejudiced from the consolidation of the wrongful death and personal injury actions. Because
the record demonstrates neither legal error nor prejudice from any legal error, we hold the trial
judge did not abuse his discretion. See Landon v. Budinger, 724 S.W.2d 931, 936-37 (Tex.
App.--Austin 1987, no writ). We therefore overrule point of error two. 



EXCLUSION OF EVIDENCE


 In point of error one, Owens-Corning contends the trial court erred in excluding
Peter Frank's testimony regarding the company's financial condition. Owens-Corning maintains
that Mr. Frank's testimony should have been admitted because admissibility of evidence is a
procedural matter governed by Texas law, and under Texas law, unlike Alabama law, evidence
of a defendant's net worth is admissible to aid the jury's consideration of punitive damages. (3)

 The trial judge granted plaintiffs' pre-trial motion in limine regarding Mr. Frank's
proposed testimony. During trial, outside the presence of the jury, the parties agreed that Owens-Corning could offer the evidence in the form of a verbatim transcript of Mr. Frank's testimony
given in the post-verdict hearing in Wasiak v. Owens-Corning, No. 92-02238-A (147th Dist. Ct.,
Travis County, Tex., Oct. 20, 1993). They agreed further that the transcript should suffice as
a bill of exceptions. We cannot find in the record, however, that Owens-Corning actually offered
the Frank testimony in evidence.

 A trial court's order sustaining a motion in limine is not a final ruling on the
admissibility of the evidence that preserves error for appellate review. Tempo Tamers, Inc. v.
Crow-Houston Four Ltd., 715 S.W.2d 658, 662 (Tex. App.--Dallas 1986, writ ref'd n.r.e.). To
be entitled to complain on appeal that the trial court erroneously excluded evidence pursuant to
a motion in limine, the complaining party must (1) offer the evidence developed in a bill of
exceptions and (2) obtain an adverse ruling from the trial court. Lakeway Land Co. v. Kizer, 796
S.W.2d 820, 827 (Tex. App.--Austin 1990, writ denied); Tempo Tamers, 715 S.W.2d at 662-663. 
Because the record does not show that Owens-Corning did as much, nothing is presented for
appellate review. See Reveal v. West, 764 S.W.2d 8, 10 (Tex. App.--Houston [1st Dist.] 1988,
no writ); Industrial Disposal Supply Co. v. Perryman Bros. Trash Serv., 664 S.W.2d 756, 762
(Tex. App.--San Antonio 1983, writ ref'd n.r.e.). We therefore overrule point of error one.



PUNITIVE DAMAGES


 In points of error three and four, Owens-Corning contends the trial court erred in
overruling its motion to disallow the punitive-damage award. Owens-Corning argues on the
following theory that the award is excessive: in the context of mass-tort litigation involving
asbestos products, repetitive, cumulative punitive-damage awards for a single course of conduct
violate, at some point, Alabama substantive law and state and federal due process of law because
the goals of punishment and deterrence underlying punitive damages have been achieved by
previous punitive-damage awards in earlier suits. 

 In Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 21 (1991), the United
States Supreme Court held that when a punitive-damage award is challenged as excessive on due
process of law grounds, an appellate court must "make certain that the punitive damages are
reasonable in their amount and rational in light of their purpose to punish what has occurred and
to deter its repetition." In order to determine whether a punitive-damage award is reasonably
related to the goals of punishment and deterrence, an appellate court may consider the following
factors:


(a) whether there is a reasonable relationship between the punitive damages award
and the harm likely to result from the defendant's conduct as well as the harm that
actually has occurred; (b) the degree of reprehensibility of the defendant's conduct,
the duration of that conduct, the defendant's awareness, any concealment, and the
existence and frequency of similar past conduct; (c) the profitability to the
defendant of the wrongful conduct and the desirability of removing that profit and
of having the defendant also sustain a loss; (d) the "financial position" of the
defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions .
. . to be taken in mitigation; (g) the existence of other civil awards against the
defendant for the same conduct, these also to be taken in mitigation.


Id. at 22-23 (hereinafter the "Green Oil factors"). (4) 

 In Haslip, the Supreme Court expressly upheld the constitutionality of Alabama's
common law method for assessing and reviewing punitive-damage awards and identified the
State's three-stage process for ensuring the reasonableness of such awards: (1) jury instructions
explaining the nature, purpose, and basis for the award; (2) post-verdict review of the award by
the trial-court; and (3) appellate review. Id. at 19-22.

 In the present appeal, Owens-Corning does not challenge the jury instructions, and
we find them adequate to confine the jury's discretion to deterrence and punishment. See id. at
19. Owens-Corning confines its argument instead to a consideration of the Green Oil factors and
concludes that the $775,000 punitive-damage award is repetitive of previous punitive awards in
violation of Alabama law and the company's constitutional rights to due process of law. Owens-Corning raised the same argument before this court in Owens-Corning v. Wasiak, No. 03-94-00079-CV (Tex. App.--Austin Feb. 14, 1996, no writ h.), and we will refer to our decision in
Wasiak throughout our discussion.

 Under Alabama law, when a defendant, through proper post-verdict motions,
contends a punitive-damage verdict is excessive, the trial court is authorized to consider the Green
Oil factors and to receive evidence relevant to those factors in a post-verdict hearing. The trial
judge is obligated then to state on the record any reasons for not interfering with the jury verdict. 
See Tapley, 546 So. 2d at 377. An appellate court reviews independently the punitive-damage
award by evaluating the evidence according to the Green Oil factors. (5) See Haslip, 499 U.S. at
21; Tapley, 546 So. 2d at 377; see also BMW of N. Am., Inc. v. Gore, 646 So. 2d 619, 625-27
(Ala. 1994), cert. granted, 115 S.Ct. 932 (1995). We conducted such a review in our decision
in Wasiak.

 Unlike Wasiak, Owens-Corning did not in the present cause request a remittitur of
the punitive-damage verdict and did not request the trial court to conduct a post-verdict hearing
concerning the excessiveness of the award. In fact, Owens-Corning argued that a post-verdict
Green Oil review of the award was improper. (6)
 Owens-Corning chose instead to attack the award
of punitive damages in a pre-trial motion and in the company's motion for new trial. Because the
motion for new trial was overruled by operation of law, the record does not reflect the trial court's
reasons for not interfering with the jury verdict.

 In overruling a defendant's contention that the jury verdict is excessive, urged in
a motion for new trial, for judgment notwithstanding the verdict, or for remittitur, the trial court
must provide an order stating the court's reasons, in terms of the Green Oil factors, for declining
to disturb the verdict. See Tapley, 546 So. 2d at 377; Chandler, 547 So. 2d at 821, 839. A trial
court's failure to provide such an order, following the overruling of these motions, has been
grounds for remand by Alabama appellate courts. See Fraser v. Reynolds, 588 So. 2d 442, 447
(Ala. 1990); Chandler, 547 So. 2d at 821. When remand was ordered, however, the defendant
had complained on appeal of either the trial court's denial of a Green Oil hearing altogether or
the trial court's failure to state on the record its determinations regarding the Green Oil factors. 
See Fraser, 588 So. 2d at 447; Chandler, 547 So. 2d at 821. In the present appeal, however,
Owens-Corning does not make a complaint of that kind. Instead the company complains the
punitive-damage award here is "excessive" in a very particular sense. As it did in its motion for
new trial, Owens-Corning complains the award of any sum as punitive damages was reversible
error, and deprives the company of property without due process of law, because the aggregate
of punitive-damage awards in earlier lawsuits had accomplished all that could be accomplished
by way of punishment and deterrence -- the only objectives that such awards are intended to
achieve. Under these circumstances, it is unclear whether Alabama law required the trial court
to provide an order giving reasons for not disturbing the jury verdict.

 In reviewing independently the punitive-damage award pursuant to Haslip,
however, we hold that any error on the part of the trial court, in failing to reflect on the record
its consideration of the Green Oil factors, was harmless. We believe the sum awarded here as
punitive damages, when aggregated with previous punitive-damage awards, is reasonably related
to the objectives of punishment and deterrence underlying such awards and thus does not violate
either the constitutional guaranty of due process of law or Alabama substantive law. In addition,
Owens-Corning was not prejudiced by the lack of a post-verdict hearing at the trial court because
the record contains the evidence that Owens-Corning argues in its brief should be considered in
our review of the punitive-damage award. Through its pre-trial motion regarding punitive
damages and its bill of exceptions containing the testimony of Mr. Frank regarding the overall
effects of the asbestos-litigation on Owens-Corning, the company's financial condition, and the
profitability of Kaylo, the evidence relevant to the Green Oil factors was available for our
consideration.

 Here, as in Wasiak, we have evaluated the evidence according to the Green Oil
factors only as those criteria relate to Owens-Corning's claim that the $775,000 punitive-damage
award here was repetitive of the $3 million in punitive damages the company had paid previously
in other lawsuits. Because the evidence in this appeal was so similar, arguably identical in fact,
to the evidence before this court in Wasiak, we find it unnecessary to repeat our discussion of each
Green Oil factor and refer to our Wasiak opinion in that connection. See Wasiak, No. 03-94-00079-CV at 8-12. Suffice it to say, the evidence supports a conclusion that Owens-Corning's
conduct justified the punitive damages in this cause, and Owens-Corning has failed to show that
the aggregate of punitive-damage awards against it has fully achieved the purposes of such
awards. We overrule points of error three and four. 


 In light of the foregoing disposition, we affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: February 14, 1996

Do Not Publish

 
1. Under Alabama's unusual wrongful-death statute, only punitive damages are recoverable
in claims of wrongful death. See Ala. Code § 6-5-410 (1975). Compensatory damages are
proper, however, for claims of loss of consortium by the decedent's spouse and for claims by
heirs for losses, expenses, and damages incurred by the decedent until the time of death. See
Mattison v. Kirk, 497 So. 2d 120, 123 (Ala. 1986); King v. Nat'l Spa and Pool Institute, 607 So.
2d 1241, 1248 (Ala. 1992). 
2. Our holding is supported by the decision in Life Insurance Co. of Georgia v. Johnson, No.
1940357 (Ala. Sup. Ct. Nov. 17, 1995), handed down since the time of trial in the present action. 
In Johnson, the Alabama Supreme Court changed the procedure for awarding punitive damages
to a bifurcated system similar to the Texas procedure adopted in Transportation Insurance Co.
v. Moriel, 879 S.W.2d 10, 29-30 (Tex. 1994). In the initial phase of the trial, the jury determines
liability and compensatory damages. In the second part of the bifurcated trial, the jury receives
evidence relating to punitive damages which was not admissible in the trial-in-chief, including
evidence of the defendant's financial position and other evidence admissible during post-verdict
review. Johnson, No. 1940357 at 22-23. The court made clear, however, that this bifurcated
system does not apply to wrongful death actions, suggesting that the earlier system for assessing
punitive damages, regardless of its source in statutory or common law, does apply in actions for
wrongful death. See id. at 22. 
3. Owens-Corning also argues that Mr. Frank's testimony was admissible even under Alabama
law because the Alabama rule which precludes a jury from considering evidence of a defendant's
financial position does not apply in actions for wrongful death. We have discussed this issue in
connection with point of error two. 


 Owens-Corning contends alternatively that if Alabama law applies, it was a violation of
state and federal due process of law to preclude the jury from hearing such evidence. However,
in Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 21-22 (1991), the Supreme Court
upheld the constitutionality of Alabama's post-verdict review of punitive-damage awards during
which evidence of the defendant's financial condition is submitted to the trial court.
4. These criteria were originally adopted as a means of reviewing punitive-damage awards by
the Alabama Supreme Court in Green Oil Co. v. Hornsby, 539 So. 2d 218, 223-24 (Ala. 1989)
and Central Alabama Electrical Cooperative v. Tapley, 546 So. 2d 371, 377 (Ala. 1989). 
5. We note that an appellate court's analysis of the evidence under Alabama law does not differ
substantially from the appellate review of punitive-damage awards available in Texas pursuant to
the recent decision in Moriel. See supra note 2. Moriel requires an appellate court conducting
a factual sufficiency review of a punitive-damage award to "carefully scrutinize punitive awards
to ensure that they are supported by the evidence" and to "detail the relevant evidence . . .
explaining why that evidence either supports or does not support the punitive damages award." 
Moriel, 879 S.W.2d at 31. In fact, the Green Oil factors are more comprehensive than those
applied by Texas courts.
6. Owens-Corning argued the impropriety of post-verdict review on the ground that this
procedure was inapplicable to wrongful death actions under Alabama law. As previously
discussed under point of error two, this post-verdict safeguard is consistently applied to the
punitive-damage awards in Alabama wrongful death actions.




ule points of error three and four. 


 In light of the foregoing disposition, we affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: February 14, 1996

Do Not Publish

 
1. Under Alabama's unusual wrongful-death statute, only punitive damages are recoverable
in claims of wrongful death. See Ala. Code § 6-5-410 (1975). Compensatory damages are
proper, however, for claims of loss of consortium by the decedent's spouse and for claims by
heirs for losses, expenses, and damages incurred by the decedent until the time of death. See
Mattison v. Kirk, 497 So. 2d 120, 123 (Ala. 1986); King v. Nat'l Spa and Pool Institute, 607 So.
2d 1241, 1248 (Ala. 1992). 
2. Our holding is supported by the decision in Life Insurance Co. of Georgia v. Johnson, No.
1940357 (Ala. Sup. Ct. Nov. 17, 1995), handed down since the time of trial in the present action. 
In Johnson, the Alabama Supreme Court changed the procedure for awarding punitive damages
to a bifurcated system similar to the Texas procedure adopted in Transportation Insurance Co.
v. Moriel, 879 S.W.2d 10, 29-30 (Tex. 1994). In the initial phase of the trial, the jury determines
liability and compensatory damages. In the second part of the bifurcated trial, the jury receives
evidence relating to punitive damages which was not admissible in the trial-in-chief, including
evidence of the defendant's financial position and other evidence admissible during post-verdict
review. Johnson, No. 1940357 at 22-23. The court made clear, however, that this bifurcated
system does not apply to wrongful death actions, suggesting that the earlier system for assessing
punitive damages, regardless of its source in statutory or common law, does apply in actions for
wrongful death. See id. at 22. 
3. Owens-Corning also argues that Mr. Frank's testimony was admissible even under Alabama
law because the Alabama rule which precludes a jury from considering evidence of a defendant's
financial position does not apply in actions for wrongful death. We have discussed this issue in
connection with point of error two. 


 Owens-Corning contends alternatively that if Alabama law applies, it was a violation of
state and federal due process of law to preclude the jury from hearing such evidence. However,
in Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 21-22 (1991), the Supreme Court
upheld the constitutionality of Alabama's post-verdict review of punitive-damage awards during
which evidence of the defendant's financial condition is submitted to the trial court.
4. These criteria were originally adopted as a means of reviewing punitive-damage awards by
the Alabama Supreme Court in